(Nos. 33142, 33143.—

THE PEOPLE *ex rel.* C. Ward Harris, County Collector, Appellee, *vs.* THE CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.—THE PEOPLE *ex rel.* C. Ward Harris, County Collector, Appellee, *vs.* SUPERIOR COAL COMPANY, Appellant.

*Opinion filed November 18, 1954.*

NELSON TROTTMAN, of Chicago, and HUGH J. DOBBS and MILES GRAY, both of Springfield, (LOWELL HASTINGS, and GERALD M. CHAPMAN, of counsel,) for appellants.

EDWARD R. PHELPS, State's Attorney, of Carlinville, and PAUL C. VERTICCHIO and J. W. WENZEL, both of Gillespie, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Two cases, No. 33142 and No. 33143, have been consolidated for review by this court. They concern identical objections filed in the county court of Macoupin County questioning the levy of 1951 taxes for the educational fund of Community Consolidated School District No. 10, hereinafter referred to as the district. The county court overruled the objections, and since a matter relating to revenue is involved the objectors have appealed to this court.

The district was organized on February 13, 1948, as a community consolidated school district pursuant to authority contained in sections 8-1 to 8-8 of the School.Code. (Ill. Rev. Stat. 1947, chap. 122, pars. 8-1 to 8-8.) The ballot submitted at the election did not contain any limitation as to what grades were to be instituted, but simply offered the proposition for or against the establishment of a community consolidated school district. At all times relevant herein, the district has had a population in excess of 2,000, but the assessed valuation of all property within the district has been less than $6,000,000.

After its organization, the district maintained grades one through eight. The territory of the district coincided

with that of High School District No. 184, which was discontinued by an election on July 24, 1951, thus leaving the area nonhigh school territory. The following day, July 25, 1951, the board of education of the district adopted a resolution to operate and maintain grades nine through twelve in addition to grades one through eight.

On August 11, 1951, an election was held at which the electors of the district approved a rate of $1.775 for educational purposes, this being a rate which could be levied only if grades one through twelve were lawfully maintained. (Ill. Rev. Stat. 1951, chap. 122, art. 17.) Thereafter, on August 31 the district made a levy for educational purposes of $135,609.09, which the county clerk extended at the rate of $1.775. The objectors, The Chicago and North Western Railway Company and Superior Coal Company, protested the tax resulting therefrom as follows: "Said district having failed to properly establish itself as a 12-grade district the election of August 11, 1951, is null and void for the reason that the rate approved of $1.775 exceeds the limit of rate that may be voted for an elementary school district of $1.125. The legal rate for said district voted at election held February 13, 1948, is 90 cents, and therefore the $1.775 rate extended is excessive and illegal to the extent by which it exceeds said 90-cent rate or 87.5 cents, and objection is made to said 87.5 cents of the rate so extended.'"

The objectors' position is twofold: (1) the district, being a community consolidated school district, did not have authority to establish grades nine through twelve by resolution of the board where it was previously maintaining only grades one through eight; hence, the election of August 11, 1951, was void, since on that date the district was not lawfully maintaining grades nine through twelve. (2) Even if the district was authorized to maintain grades nine through twelve, the election of August 11, 1951, was

void, inasmuch as the provisions of the School Code relating thereto were not complied with.

In support of their first contention, the objectors argue that to construe the School Code so as to permit the board of education of a community consolidated school district to establish high school grades contravenes the manifest legislative intent to restrict the establishment of high schools and subject their establishment to referendum. In addition, they urge that the enactment of community unit school district provisions (Ill. Rev. Stat. 1947, chap. 122, pars. 8-9 to 8-14) voided any power which might have existed previously in a community consolidated school district to institute grades nine through twelve. It is argued that since the district did not have the express power necessary to institute grades nine through twelve by resolution, such power cannot be implied from article 7 of the School Code.

The district contends that the School Code authorized and empowered a community consolidated school district, by resolution of the board, to establish schools of different grades, and the enactment of the provisions with reference to community unit school districts did not affect such power of a community consolidated school district.

At the time the district was organized, section 8-5 of the School Code (Ill. Rev. Stat. 1947, chap. 122, par. 8-5,) provided: "The territory organized into a community consolidated school district shall be a school district and the board of education thereof shall have the same powers and duties as boards of education elected in accordance with Article 7."

Referring to article 7, section 7-6 thereof, dealing with the duties and powers of a board of education, provided: "The board of education has all the duties and powers of school directors as set forth in Article 6, is subject to the same limitations, and in addition thereto, has the powers and duties enumerated in Sections 7-7 to 7-19, inclusive."

Section 7-9, enumerating one of said powers, provided: "To establish schools of different grades, to adopt regulations for the admission of pupils into them, and to assign pupils to the several schools."

It is to be noted that authority is granted "to establish schools of different grades," there being no indication that only grades one through eight are referred to. This court has recognized that a common school district or a community consolidated school district could establish and maintain grades nine through twelve, or a high school department. See *People ex rel. Swingle v. Pinari,* 332 Ill. 181; *Hartman v. Pesotum Community Consolidated School Dist.* 325 Ill. 268; *People v. Moore,* 240 Ill. 408; *Russell v. High School Board,* 212 Ill. 327.

The objectors argue, however, that even assuming a community consolidated school district did have authority to establish and maintain grades nine through twelve prior to 1945, legislation passed in that year and subsequent years evinced an intent that such a district could not establish and maintain a high school department except by following procedures discussed below and which the district did not follow. Their argument in this regard is as follows: In the 1945 School Code, which must be considered a complete act in itself, sections 8-1 to 8-8 related to community consolidated school districts. Section 10-28 thereof, pertaining to high school districts with the same boundaries as common school districts, provided, in part, as follows: "Any school district organized and existing under Article 7 having a population of two thousand inhabitants or more may, in the manner herein provided for establishing and maintaining a township high school, establish and maintain a high school . . ." It is conceded that the district did not proceed pursuant to authority granted in this section. Then in 1947 there was a further amendment to the School Code, provision being made in sections 8-9 to 8-14 for the organization of community unit school districts. To qualify under

these sections a district was required to have a population of 2,000, as well as an assessed valuation of not less than $6,000,000. So, in 1947 there was provision made for the establishment of a community unit school district and also for the establishment of a township high school pursuant to section 10-28. As aforesaid, however, the district did not proceed under section 10-28 nor did it act pursuant to the provisions of the law relating to community unit school districts. Further, in 1951, before the district adopted the resolution here in question, the legislature repealed section 10-28 and the provisions with regard to township high schools. Also, the requirements for community unit school districts were stiffened by providing for a minimum tax rate of $1.50. All of this, it is insisted, evinces an intent by the legislature to limit any previous power of a community consolidated school district to establish and maintain grades nine through twelve.

We do not believe the objectors' argument is sound. For we find nothing in the amendments to the School Code that they discuss which in any way limits the authority of a community consolidated school district.

First, section 10-28 applies to a district organized and existing under article 7, whereas the organization of a community consolidated school district is governed by sections 8-1 to 8-8. Moreover, nothing is said in the sections relating to the organization of community unit school districts which has any application to the powers of a community consolidated school district.

Second, a consideration of the language of the statutes defining the authority of a board of education to establish and maintain grades convinces us that a community consolidated school district has authority, within the meaning of said sections, to establish grades nine through twelve. Section 8-4 states that the board of education shall have the powers and duties of boards of education as defined in article 7. (Ill. Rev. Stat. 1951, chap. 122, par. 8-4.) In

section 7-6, a board is delegated all the duties and powers enumerated in article 6, in addition to the powers set out in sections 7-7 to 7-19. (Ill. Rev. Stat. 1947, chap. 122, par. 7-6.) Section 7-9 accords the power "To establish schools of different grades, and adopt regulations for the admission of pupils into them." There is no intimation that "schools of different grades" are meant to be limited to only grades one through eight. That such is not the legislative intent is further manifested by an amendment to this section by the 1951 legislature, which added the following to the above-quoted portion of section 7-9: "* * * however, in any district having less than 2,000 inhabitants no grades above the eighth shall be maintained unless they were maintained during the school year ended June 30, 1949." While this proviso refers to the maintenance and not to the establishment of grades above the eighth, if it was deemed necessary to specifically single out a district having less than 2,000 inhabitants regarding the maintenance of grades above the eighth, it must have been considered that districts with over 2,000 inhabitants *could* maintain grades above the eighth. It seems to follow, therefore, that the word "grades," as used in this section, is not to be interpreted as being limited to only grades one through eight. This is further substantiated by the fact that prior to 1945, as we have heretofore pointed out, it was recognized that a community consolidated school district and a common school district could establish and maintain a high school department. Nothing in the School Code warrants a holding that such authority is to now be denied a community consolidated school district; hence, we conclude that the board of education of the district had the power by resolution to establish grades nine through twelve, and the first contention of the objectors is without merit.

The second contention of the objectors is that even if the district had authority to maintain grades nine through

twelve, the referendum of August 11, 1951, was void since it did not comply with the provisions of the School Code relating to such referenda. It is argued that up until July 25, 1951, the district had a tax rate for educational purposes of 90 cents. Subsequently, by a single election held on August 11, 1951, they attempted to increase this rate to $1.775. Under applicable law, since the board did not increase its rate to $1.00 by resolution, the maximum rate which could legally have been submitted at the first referendum would have been $1.30. Ill. Rev. Stat. 1951, chap. 122, par. 17-4.

It is the position of the district that this particular matter is not at issue before this court, because the objection filed in the county court and quoted herein did not raise this question.

We repeat a pertinent portion of said objection: "Said district having failed to properly establish itself as a 12-grade district the election of August 11, 1951, is null and void for the reason that the rate approved of $1.775 exceeds the limit of rate that may be voted for an elementary school district of $1.125." It seems clear that the objection relates only to the question considered in the objectors' first contention, namely, the authority of the district to establish and maintain grades nine through twelve. Nothing is alleged pertaining to the invalidity of said election by reason of any failure to comply with the statutory provisions governing said elections. The Revenue Act requires that a taxpayer specify "the particular cause of objection." (Ill. Rev. Stat. 1951, chap. 120, par. 716.) Since there was no objection which raised the second contention urged by the objectors, the latter have no right to be heard on the question in this appeal.

The judgments of the county court of Macoupin County overruling objections to said tax are correct, and are accordingly affirmed.

*Judgments affirmed.*